Good morning everyone and glad to have all of you all here today we are going to begin with our first case of the morning United States of America versus James Snyder and we welcome Ms. Gambino. Good morning. Good morning Judge Jackson, Akiwumi, Judge Hamilton and Judge Lee. It is my privilege to represent James Snyder before the court this morning and as you know there were two trials in this case we will be discussing issues from both trials. I will focus my presentation on the interference with attorney-client communications with the violation of Mr. Snyder's statute of limitations with respect to the tax count, the inappropriate application of section 666 to the case at bar and also the violation of Mr. Snyder's statutory and constitutional speedy trial rights. We also have argued for the appropriate remedy in this case which is a judgment of acquittal on both accounts 2 and 3 and that the district court has aired in each case when those motions were denied. So beginning with the attorney-client communications issue, this issue means that Mr. Snyder's case should not have gone to trial at all. The government interfered with the attorney-client communications in several ways. First of all they filed a petition for a search warrant, a motion for a search warrant and they did not include in that search warrant a notice to the magistrates that privileged information and work product information would be included within the scope of their search and seizure. Secondly they did not include in the warrant any time limitations or content limitations rendering their request overbroad. They did collect all of Mr. Snyder's gmail accounts, both his personal and his professional emails. Ms. Gambino, with respect to your over-breadth argument, I don't recall that being really pressed in the district court. Could you correct me on that? Yes, your honor. It was pressed in the district court on several occasions. First of all they argued at the time that this issue was presented that there were no time limits included in the search warrant, similar to the case in... Sorry, they argued? Who's they? Mr. Snyder's attorneys argued that there were no time limits in the warrant and they compared the case to what happened in the district court in the central district in the case of the United States versus Wahi where there also similarly were no time limits issued and there were several other problems with that. The attorneys, the government attorneys in Wahi had recovered privileged information and ended up dismissing that case. And with respect to the over-breadth issue I would would seem to present a Leon problem since the and the government carried it out. Is there a, would you have a basis for overcoming good-faith reliance on the scope of the search warrant? Yes, your honor, because the the magistrate who issued the warrant was not properly informed of everything that they they were looking for or that the attorney client privileged communications would be included within the scope of their So he did not have all of the information that he needed in order to make the decision. Ms. Gambino, how would the government know whether or not a client attorney communications would be within a category of documents that they seek to seize? As a matter of course, do they need to just tell the magistrate? Well there's potential, like in every case, that the seizure might include attorney client documents. And if so, what practical impact would that have? Well your honor, in this particular case there had been ongoing discussions with the attorney involved in the case that was representing Mr. Snyder at that time over the period of almost, well about a year and a half, almost two years. There were communications going back and forth between the government and that that attorney. There were several meetings with that attorney as that that attorney was attempting to persuade the government to not prosecute Mr. Snyder. So they were well aware not only that Mr. Snyder was represented, but they were in in communications with the attorney and they would follow up with issues. The government would raise issues, his attorney would then come back and address those issues, and that process was continuing throughout this time period. So it is not always the case when somebody's being investigated for a criminal offense that they are in that kind of a relationship with the government where the government has reason to know that the person is represented at the time that they go for their search search warrant. In addition, in this particular case, the government had been asking for, through the production of grand jury subpoenas, information from that attorney and they were getting responses from that attorney. So this isn't the sort of case where they needed to be secretive or they were unaware of whether the person was represented or not. They were in an ongoing relationship with Mr. Snyder's attorney. So under those conditions, they had very good reason to know that they would be collecting privileged information. And in continuing response, Judge Hamilton, to your question, there were also at the Record 54, page 21 to 22, Record 102, page 4 through 9, and Record 106, 40 through 42, you will have briefings from Mr. Snyder's attorneys in which they argued the absence of time and content limitations and the overbreadth issue before the district court. So that was fairly presented and pressed before the district court. The major problem, of course, with respect to this issue is the interference with the attorney-client relationship. And although, and this was the source of another error of the district court, because the district court dismissed this argument by saying that the attorney-client, the Sixth Amendment right doesn't attach to the time of indictment. However, the case law is clear that the issue of attorney-client privilege is key to effective assistance of counsel. And that when you interfere with the relationship between an attorney and a client, then you have interrupted that our entire system is founded. And is it your view that interference occurs regardless of government efforts to screen and prevent the prosecution team's access to privileged materials? I don't take that that broad of view. I do say in this particular case the government's presumably then with sufficient procedures, this sort of thing can be done without violating Sixth Amendment rights, correct? That's correct. If you look at the cases that have addressed this issue, basically two things are required. One is the court involvement prior to the turnover of the information to the prosecution team, and also notice to the court in some way, with the state reform, that this is happening. And an opportunity for the person who has the privilege to review the documents. Why is that opportunity important in a criminal investigation? It was particularly important in this investigation because the relationship between Mr. Snyder and his attorney was that there would be, or had reason to know, that there would be communications between the two. Right, and they took steps. But I'm not, I guess I'm not convinced that at least in our case law, the court has to be involved, let alone that the subject of the investigation has to be involved in that process. The government, why can't the government undertake that process at its own risk in essence? Well, that's what it did here and it turned out badly. Well, there were three mistakes, right? Arguably. Well, we don't know the scope of the mistakes because there was never an opportunity in advance of this litigation for the attorney who was conducting the representation of Mr. Snyder to do that kind of privilege search. And in every case that I have read and cited in our history, that has been a critical part of the process that happened. Either a magistrate judge was involved prior to turning over the information or there was some review by the person who held the privilege that would allow litigation over the issue if there were a dispute between what was privileged or not. In this particular case, the way they conducted it, there was no opportunity in advance of the government's trial lawyers getting the material to make any kind of determination whether they should have had the material or not. And particularly, there was no opportunity outside the Department of Justice. That's true and another thing that was wrong with the way this was conducted and criticized in several of the cases that I have referred to in my brief, is having a non-lawyer make the initial determination of how to search the documents. So in this case, we know that the agent Field, who was the person responsible for doing that, admitted during the course of the hearing that he didn't know what work product was at the time that he suggested search terms to the people in the case. So he left out a whole body of documentation or potential documents that were allowed to go to prosecution without being reviewed at all. So that also was a problem in the context of this case, that you can't have a non-attorney making the decisions about how the information is going to be searched, particularly as he admitted in this particular case, there was no guidance to him from the government attorneys that were responsible for the case at the time. I'm interested in where you were going with your answer to Judge Hamilton's question about the Sixth Amendment. You invoked ineffective assistance of counsel. Were you suggesting that even though, as the district judge ruled, the Sixth Amendment does not attach until the time of charging, that if there's an IAC element, we somehow can issue a ruling that kind of pushes that time back in time? Where were you going there? It's not that it pushes. I would say that's arguing apples and oranges. The concern with an interference with attorney communications is that you're interfering with the integrity of the system. Because the relationship between an attorney and a client depends on having the privilege, both privilege communications and the work product doctrine. And when you interfere with that, then you put into question the integrity of the representation. And you what they don't know has occurred. So the government had access to attorney-client privilege communications at a time when it was investigating Mr. Snyder. And we can't know, and in part we can't know because the judge, the district court, did not allow a hearing on this particular issue, how, what they gained from this privileged material and attorney-client communications affected their investigation, their interview of witnesses, their preparation for trial, their ability to respond to defenses that they had reason to know were coming because of the communications that they had access to. So there's a whole, the defendant can't know and the court can't know all of the potential damage that is communication has interfered with. So we've got three levels of review outside the trial team, right? In the DOJ? We've got the Washington screening, then we've got a second tier, I've forgotten the details of that, and finally in AUSA that's the screening, right? That's correct. And as I understand it from the district court's work, we essentially have three documents that arguably slipped through all these sieves, right? We're privileged? That's what the district court found. That's not what the defense team contended. I understand that, but I don't, I don't, maybe I'm forgetting something, but are you, have you identified any other documents that were privileged and slipped through? Well, there were a number of documents that are identified in the, or a number of sets of documents in which they found the email to be privileged, but not the attachments. Right. So what I'm trying to get at, Ms. Gambino, is where's the harm here, given the layers of screening and the results of it? Well, the harm, we can't, we can't properly identify, Judge, and the harm is in the, I would say, the ineffectiveness of the screening and the fact that the people that were doing the screening were not even aware. It sounds like what you want, you're criticizing the the prosecution. And that, yes, I am, I am asking you to presume that, and in fact, I am, along with the Third, Fourth, Sixth, and Eleventh circuits, who find that prejudice is to be presumed in these kinds of cases. Now, and then with regard to presumed prejudice, the Third and the Tenth in D.C. have adopted that position because it's the most protective. In the Levy case, for instance, they did point out what I've argued here, that it's not possible to know how the government used the information, the impact on the investigation, witness interviews, jury selection, and trial, and so this is the most, not only the most protective standard for the defendant's Sixth Amendment rights, but also it's the most protective of the integrity of the system. And in Levy, the remedy was dismissal, finding that recusing the trial team who had access wouldn't cure the problem, and this is precisely the approach that was taken by the government in Wahi. They dismissed the case. Now, the government relies on on SCARFO, which is actually not applicable to our case because it's a crime-fraud exception, but even in SCARFO, the protections that were provided to the defendant and the holder of the privilege were far more extensive than were provided here. Basically, each of the cases that has addressed this particular process have only approved it where you have some involvement with the court before the privilege material is turned over or that you've allowed privilege review prior to the turnover of the material so that you don't have privilege material going to the government. And in this particular case, we have a couple of other concerns. In a very small office like the office in Indiana, it's very hard to imagine that a Chinese wall is going to be very effective. How big is big enough? The most appropriate thing would be to have people who don't, at least a substantial body of people who don't know each other or another office altogether. They had brought the Chicago office in for other reasons. They could have used somebody from that office. So you're saying any time, but I guess the Chicago office you think is big enough? I would argue that this is not a process that should be used without some neutral interposition by either a magistrate or... Do you think we ought to control that with case law? Yes, I do. And I think there's case law that does make that clear. Ms. Gambino, you're into your rebuttal time, but I was hoping you'd have a chance to address however quickly you want the other issue you mentioned, which was the statutory interpretation issue. If you choose that or some other issue and still want to reserve time. Thank you, Judge. I would like to go to the statutory interpretation issue in this particular case. With respect to Mr. Snyder's case, it's our position that there was neither a bribe nor a gratuity demonstrated and that the interpretation of what constitutes a bribe, a reward, or a gratuity is best laid out by the First Circuit in Fernandez and followed recently by the Fifth Circuit in Hamilton, where instead of interpreting reward to be a gratuity under 666, it interprets reward to be another type of a timing issue with bribe. So that it is a gratuity rather than being a gratuity because the penalties don't correspond. In 201, the penalties for bribery, the maximum penalties are 15 years and the gratuity are only two years. In 666, the maximum penalty for the statute is 10 years. My biggest question there is even assuming we adopt your position that 666 requires a quid pro quo showing, was there enough here for the jury, a jury, to reasonably infer that? And I wonder if the the blue brief draws the inferences in Mr. Snyder's favor, but that's not our standard of review. Your Honor, it's our of the government, you can't get to a finding of a bribe or gratuity without speculation. That the problem in Mr. Snyder's case is that there was no presentation with respect to either the alleged payor or Mr. Snyder and the corrupt intent. And then in order to get to that, you have to speculate about those were very few in and of themselves as basically the Bujas denied that they had participated in any kind of bribery. And there was evidence that Mr. Snyder had been paid in return for work that he had done for them. That's the work that nobody could remember? Well, they didn't remember the entirety of it, but they did remember that he did consult with them with respect to insurance. They did remember that they he provided an attorney meeting for them that saved them $30,000 in a particular tax issue that they were looking at. So, you know, the argument wasn't that he did no work. The argument was that they didn't believe that that his work was sufficient to be a consultant. But that is speculative also. So Ms. Gambino, I take it that it seems like the government's issue that Jackson Akumi raised was that there is evidence that Mr. Snyder used Mr. Reeder to manipulate the bidding system by crafting a bid requirement or requirements that only one particular vendor could meet. That process went through. The contract was awarded. Shortly thereafter, there was a monetary transaction between the vendor and Mr. Snyder. Why wouldn't it be a reasonable inference that the monetary, that the money that Mr. Snyder received shortly after this contract was awarded based upon those facts was the product of a bid? Well, the problem with that theory is that it wasn't supported by the evidence. In fact, there were more, there was more than one vendor that could have met the specifications, at least in part. There was no one specification that exempted. Well, like in the first bid, there was the issue about the 150-day requirement, right? And that that was, there was evidence that that was specifically that the had a conversation with Reeder that there could meet the 150 days. There was testimony from other vendors that generally in the industry, 150 days was too short of a time, and that got into the bid requirements. But they were not the, that's true as far as it goes, but they were not the only vendor that was able to meet that 150-day requirement. The other vendor who was able to meet the 150-day requirement wasn't able to provide the kind of truck that the mechanics liked. And also that the other source of that, or the primary source of that 150-day requirement was Jeff Beck, who was impeached by Agent Field because Agent Field had interviewed him right away, and Mr. Beck had agreed that he told Mr. Reeder that 150 days was reasonable, and then he, Mr. Beck subsequently changed his testimony at trial. So there wasn't good evidence that this was bid rigging. This was a public process. There were other vendors who met the various qualifications, including the 150-day spec, but the specs that were required. So that isn't in sufficient evidence of bid rigging in any, by any stretch of the imagination, particularly as there were alternatives. It was also clear that this was something that Mr. Snyder, Mayor Snyder, had campaigned on, that he wanted to get done quickly, and he appointed somebody to do this, and there was no evidence that Mr. Snyder knew or had any input with respect to what the specifications were. There was evidence that Reeder talked to the mechanics, talked to his supervisor, talked to vendors, which he would expect someone to do in the course of putting something like this together. So no, there wasn't sufficient evidence that a jury could infer wrongdoing unless it speculated about people's intent or facts that weren't in evidence. We'll give you some additional. Thank you, I appreciate it. We would ask your honors to vacate the conviction. Thank you. Ms. Bonamici. May it please the Court, Deborah Bonamici on behalf of the United States, good morning. District Court correctly denied defendants motion to dismiss the indictment or disqualify the trial of the trial team after finding correctly that the search warrant was not overbroad or deficient in any way, that the government did not intentionally invade the attorney-client relationship between the defendant and his counsel, that the government employed a legally and functionally adequate filter process. There were problems here, which the District Court acknowledged, and I wonder what would be the limiting principle if we were to approve the government's conduct in this case, what's to stop the government from employing this same process, you know, without any other limits or protections in the future in a way that really can violate a defendant's rights? Well, I think my understanding of the court's finding wasn't that there was a systemic problem with the process that was employed, but rather the court identified certain aspects of the implementation that resulted in, you know, the disclosure of documents that shouldn't have been disclosed, albeit just a small number. With respect to a limiting principle, I think that the concept here is that it is important to, if you're implementing a case, to do all the qualities that this process had, which was that it be implemented by people who are walled off from the prosecution and investigation team, that it be done in a manner that is, as best as possible, capable of filtering out attorney-client privilege protection or protected documents. And also, I think, I mean, one aspect here that was weak was the concept of work product. And what we can learn from this case is that those terms, the search terms, we need to find ways to identify work product in communication such as these, and there are ways to do that. I mean, you learn from mistakes. But here, just the general notion that's put forth in some of the cases relied upon by the defense and in some of the comments, early comments made by the district court, that there's almost a presumption that members of the filter team have a conflicting interest in advancing the prosecution or the investigation. That concept is not only inconsistent with the general presumption of to the actions of the government absent a clear showing of misconduct, but also it really fails to take into account an important feature of this setting, which is that members of the filter team have a compelling interest to be as thorough as possible for the purpose of maintaining the integrity of the case. And what you see is that in most cases, that's evident by a conscientious and conservative approach. In fact, that conservative approach was described by the case agent in terms of the instructions given at the initiation of this process, and the very limited number of documents that slip through in this case, and the limited number of cases where problems occur. And so I think that whole concept that we need to be on guard because the fox is in the hen house is something that, you know, it's an undercurrent that really isn't supported. It's certainly not supported by the evidence in this case, in which the district court expressly found that none of the actors in this case did anything untoward of any kind. None of them had any intent to breach the In this case, it would seem to me that this filter system was appropriate and legally permissible. I do think that it is a true fact that as time goes on, the government, and as technology improves, and as we have more and more experience with collecting large amounts of ESI, the government, you know, consistently works toward improving their systems. Because the government's interest in these cases not only is to do justice generally, but in general, I mean, it is a huge waste of resources. I mean, even on the economic front, right? I mean, on the least important piece of it, even that is not useful for the government to ignore privilege. But that's not, I mean, that's not the primary problem or issue, but even when you get down to the end, it's never good for the government. It doesn't help the government to do this, or to make mistakes. And it is, and I would say it is important, very important, for the government to take these tasks seriously and to use the best practices in every case. And that's what is done. To alter things in the manner that the defendant has suggested, which we agree with Judge Hamilton's suggestion, that there is no case support from the Supreme Court of the Seventh Circuit for a requirement that a neutral court, or a neutral person, a court, a special master, or a, much less the counsel for the defense, be involved at the initial stages of a privilege review in the context of an ongoing investigation. I mean, that is not supported at all by the even the cases that, unlike the cases that the defendant features in their argument, this case does not involve subpoenas, does not involve a law office, does not involve a question of searching documents already determined to be privileged for crime, for documents falling within the crime fraud exception. It's none of those things. This case involves a search warrant issued to an individual who was known to be represented, that is an accurate fact, but who was the subject of an ongoing and broad-based investigation being conducted by the grand jury. And while we certainly agree that this is an extremely important interest, there are other extremely important interests at issue in this context. And, you know, chief among them is preventing the interference with or delay of an ongoing grand jury investigation, which is, you know, a well-settled piece of our law that that is to be avoided whenever possible. And another aspect or another interest is judicial economy, the idea that the district court would be expected to get involved with search warrant, with reviewing the results of a search warrant in every case involving anybody who is or may be represented by counsel. I mean, it's obviously impractical. Well, what does the government do, Ms. Bonamici, if in carrying out a search on a defendant's or a target's home and looking, let's say, for evidence of drug trafficking, and the team is reviewing documents in the home and they turn up attorney-client communications? How's that handled? The proper procedure in that situation, I believe, is to stop, don't read the document. As soon as you recognize that it's attorney-client, you don't look at it, and then to report the fact that you located it, where you ran into it, what you saw, and report that to the, if it's agents who are conducting the search, it's normally the case, report that to the prosecutor so that it can be dealt with in an appropriate fashion. That is the normal way, and that would also be the way, if we had not anticipated that there would be attorney- client communications in this particular search, that would be the same instruction. And Judge Lee, I agree that it's not true that the government can always anticipate that attorney-client privilege documents may be collected, but in this case, they did anticipate it. They anticipated it and they set up in advance the procedure that they wound up implementing with respect to all of the emails that were collected. So there are cases when it can be anticipated, but again, this is a very distinct situation from, for example, a law office where there may be multiple clients. There's likely to be, you know, a great volume, a great percentage of privilege documents that are collected. Those circumstances, you know, do call out for special procedures, and the Department of Justice has special procedures for those circumstances. What about in situations where, when you, to use Judge Hamilton's example, when you go to a person's home, the government knows that person's represented, and as part of the seizure, they seize the hard drive of a computer. In those situations, would a similar filter team typically be utilized, or would the government just simply go through it and rely upon Rule 41? I'm not sure there's a single answer to that question. I think that it is likely that the same procedure, similar procedure, I mean, the search was conducted five years ago, and I'm sure that both, I know that in the Northern District of Illinois, there have been adjustments to our protocol, and I assume that that's the case in Indiana as well. But it would depend, the particular question you asked, I think, would depend on the scope of the documents to be retrieved. It's a very unusual case, in fact, I've never seen one, where a search warrant would authorize the search of an entire computer, right, hard drive. There would be, maybe it would be a specific hard drive that we knew that certain information was being collected on, you know what I mean, or there would be certain topics that we were searching for, and so there would be a question of whether attorney-client privileged materials would be likely to be in that subset of materials that were being searched for. In that case, I think there would be, you know, the kind of procedure that we have, that we see in this case, or that we see in this case. So if there are no further questions on this point, I'll move to the statutory construction point. With respect to the defendant's argument, with respect to his conviction on a federal program bribery under 666, the defendant was properly convicted of that count, and the evidence was more than sufficient to meet or to establish his violation of that statute. And that is true whether or not you were to accept the defendant's construction of the statute, which we disagree with entirely, of course. In this case, the defendant, as was previously brought out, there was ample evidence presented to support the notion that the defendant had an advance agreement with the Buhas, and that the payment that was made after the delivery of the trucks was a function or the product of that prior arrangement. That's what the district court found when it reviewed all the from the record. Ms. Bonamici, do you agree that the instructions given to this in this trial would have permitted a conviction based on a gratuity theory? Yes. Okay. I do. Okay. So that there's probably no way for us to to duck then the choice between 666 covering both gratuities and bribery, or just alone? No, I think it works the opposite way. I think that the fact that the defendant, that the defendant clearly, the evidence was more than sufficient to establish that the defendant committed a bribery offense. Well, what you're saying is that... If I agree with you on that point, though, still the instructions allow either path. And I would think that if we were to disagree, if we were to change circuit law on the scope of 666, we would then have to order a third trial. Well, what I would say, I mean, understanding the distinction between a count that's found to be inadequate legally or factually, but in this case, because the evidence pointed clearly to a bribe, because the language, because the whole case was tried as a bribe case, and the arguments focused completely on a bribe, I think that this is a case in which that standard would not necessarily be met. This is not... I would say that the standard would not necessarily be met. And I don't actually think if a bribe or gratuity is allowed, then that would be a means rather than an element of the offense. And it's not entirely clear, it's not clear at all, that the jury would necessarily have to be unanimous with respect to the title or the label or the so for that reason as well, I don't think it would necessarily require a third trial. You'd have to, you'd have to, you'd have to make it through a couple of gauntlets before you reach that point, is what I would say. This court has, on numerous occasions, found that the contrary to defendant's argument and the cases upon which he relies, that 666 is distinct from from section 201 in a number of ways, including the fact that it treats bribes and gratuities together. The defendant's argument that the, that the evidence was insufficient and unclear with respect to the lack of testimony from the bribe payors, I think actually is of interest to the statutory construction question as well, because the 666 makes very clear by its, even by its structure alone, but also by its language, that what is, that the focus of the two separate sections, A2 and A1, I always get this wrong, ending in B, the first, the bribe taker provision. The difference between those two things, or the separate treatment of those two types of crimes, demonstrates that the line is between the pay, that the statute creates is between the payor and the payee, and it's, in the case of a, where the payee is prosecuted, it's his intent that's important. And a gratuity, the distinction that the defendant argues regarding rewards and gratuities have to do with, often have to do with time, time frame, and as she points out, the argument for calling a reward a gratuity, or not calling, or calling a reward not a gratuity, but a separate or a different kind of a bribe, relies on a difference without any, any meaning, because that in reality, this type of corruption arises in all kinds of different fact patterns, and, and the question here is whether the conduct is corrupt, whether it meets the standard that is set forth in the statute. The statute's plain language says that it talks about accepting the payment as a bribe or reward, or as a, to influence or reward, and influence is a, the word is commonly understood as either being, if it's the product of an advance agreement, then it's also a bribe, it's just a later payment, and if it's not the product of an advance agreement, it's still corrupt. It's, it's, it's, it's of the very same nature, and although we think that the plain language of the statute is more than sufficient to allow this court to maintain its course over, you know, years and years, and, and not take this opportunity to change course, we, we did present in the brief some additional legislative history that suggests that this idea that we should be looking at Section 201 as, as, as somehow informing us as to whether they're, or not only informing us, but is that Section, the existence of 201 makes the plain language, I mean influence and reward are not big words. And I think you had that opening to present that legislative history because you are right that our precedent is long on this subject, that the statute covers both bribery and gratuities, but I think the previous cases are short on statutory construction. Wouldn't you agree? No, I think that, I think, I think Bounder is a case that's, that goes quite deeply into it. I mean statutory construction, if you mean, if by what you mean by that is looking at legislative history and other forms rather than focusing on the language. I would say that the, that the, the construction arguments in the previous cases are focused on the language of the statute primarily, if not exclusively, and do not travel off into, into the other courses except that we're turning out to the cases relied upon by the defense. The existence of Section 202 is, is predominant, is the primary basis by which those cases find the words influence or reward ambiguous. And ambiguity, of course, would be what would be required before you return to any kind of legislative history argument. And this court has held, and we agree, that those terms are not ambiguous. They say what they say, and there's no need to different, are constructed differently, use different language. I mean, it, it just doesn't make any sense to do that, and it's not adequate to find the language of the statute ambiguous. If I could turn for a moment to the appeal to the statute of limitations. I understand the government, one of the government's arguments to be that Mr. Snyder misrepresented the assets that he had or the control of companies or the ownership of companies that he had when he was applying for approval for an installment payment, right? And I wanted to get from you what the government's theory is as to why the installment contracts would be a benefit to Mr. Snyder since, as the defendant points out, he would pay the same amounts whether it was by installment or in one lump sum. Well, the question is whether it's a benefit to him or whether it's a detriment to the government. I'm not sure, just wanted to make sure that I focused. The former. It's a benefit to him to postpone the payment. I mean, a loan is, any kind of loan is a benefit, right? I mean, it is of use to him, it is what he wanted, and it allowed him to continue living his, you know, I mean, here's a, here's a factual way of responding to it. When he was subject to, when he owed the IRS approximately $40,000 in personal taxes and approximately $97,000 in payroll taxes, he transferred from his business to his personal account $110,000 in one year, in 2009. That's just an example because it continues all the way through this process. Now, $110,000 would have been enough to pay much of his IRS debt, and he could have done that. He chose not to. He used the money for other purposes. Having an installment payment plan gives you the opportunity to devote less of your current income to the payment of your debt and, and takes it, and, and allows you to pay it over time. I mean, that's, that's the whole point of it. And the, the nature of the defendant's conduct with respect to his tax debt, I mean, it's elaborate, to say the least, but it, it, it was clear that everything that he did, for all the way down the line, everything that he did was not an effort to repay the debt as soon as possible or whenever he could, but rather to misrepresent to the IRS his actual ability to make payments or his ability to pay off the entire debt, repeatedly, in various ways, going to, to the extent of opening up a bank account and setting up his business so that all the money flowed through another company they didn't know anything about. So, I mean, this clearly was, I mean, he went to an awful lot of effort if he didn't get anything for it, is one, is another piece that's what I'm trying to convey. So, it, it is a misrepresentation and it did, it didn't have to, we didn't have to show that it did impact the IRS's administration of the revenue laws, but of course it did. So, the evidence was, was more than sufficient and with respect to the, if the question at all deals with the, with the specific statute of limitations, that's not the only thing that, that, that, that went into the, or it's not the only action he took within the statutory period. He was into the statutory period, well into the statutory period, continuing to run his affairs through SRC. You know, I mean, he was continuing to hide income, he was telling lies, he was, you know, he was doing other things. So, it's not that the entire statute of limitations analysis revolves around that single corrupt act. There were multiple corrupt acts, though, and including those were the obvious ones because those went directly to his communications with the IRS. But his, his, the corrupt acts that he engaged in, that he either reported or, reported falsely or failed to report to the IRS, were also corrupt acts that were part and parcel of his corrupt endeavor. Does the court have any further questions? If not, then the government requests that the defendant's conviction and sentence be affirmed. Ms. Gambino, we'll give you seven minutes. Thank you very much. Going back to Judge Hamilton's question with regard to whether, if you reorganized the, or, or adopted the First Circuit's interpretation of the statute, you would have to send it back for retrial, and I would suggest that the answer is yes, because the gratuity issue, we know under current law, anything that increases or, or decreases the defendant's penalty is an element and, and not merely a modifier. So, you're, would be correct, Judge, that if you interpret reward as gratuity, we don't know whether he was convicted for gratuity or he was convicted for bribe, and that would have to be clarified with the proper jury instruction. This court itself has recognized that there are three different categories, as separated bribe, reward, and, and gratuity, and the language simply isn't, isn't clear, particularly when you take it in context with 201. They are related. 666, as, as referred to in the, in the legislative history, developed as a response to needing to prosecute state and local officials for bribery because it wasn't clear that 201 covered that. Ms. Gambino, is it your position that there is no federal criminal restriction on state and local gratuities? That's correct, Judge. Now, with respect to... So, I guess, so how fine is the line between a gratuity and a bribe? Well, it's pretty clear in, in section 201, and the language is whether the, the money is offered for, because of, and not in return for. Right, and there's no, no, no corruptly... No quid pro quo. No corruptly adverb in gratuity. Right, right, and bribe is pretty clear that you need a, you need a, a quid pro quo, and that certainly wasn't demonstrated in this case. And while it's true that the government presented or, or argued in the, initially a bribery case in closing argument, they kind of switched around and talked about reward and gratuity. So, in this particular case especially, it would have been very helpful to the jury to have had a definition that separated bribe, reward, and gratuity. So, it's our position that either way that you go, with respect to 666, Mr. Snyder is entitled to a new trial. With respect to Judge Lee... Wait, wait, wait a second. If we stick with our current precedent, I understand you say there's not sufficient evidence to support the finding. That's correct. But that would, if that's the case, then there's a judgment of acquittal, right? That's correct. Okay, but if we stick with our course and we think there is sufficient circumstantial evidence to infer either a gratuity or a bribe, then we should affirm. Well, no, because then the jury wasn't properly instructed because we don't know which way, what they depended on, as both were argued. Did you, did you ask for, okay, I guess I'm a little confused here. I thought the position at trial was 666 simply does not apply to gratuities. That's correct. I didn't think the position was you have to instruct the jury to choose between gratuity and bribe. No, the position is that it doesn't apply. Right. Right. I thought you were telling me a moment ago, though, that even if we stick with our course of applying 666 to both bribes and gratuities, we should order a new trial because the jury was not properly instructed to distinguish between the two theories. Maybe I misunderstood you. I think I'm a little bit confused, Judge. Maybe I misspoke. But if you, if you stay the course, he should still have been instructed, the jury, he should still have been instructed about the bribe reward gratuity distinction because it was the defendant's theory that the statute doesn't cover gratuities. Okay. All right. I don't want to distract you further. Thanks. With respect to the obstruction of the IRS, Judge, I think that it's correct that this was an installment payment and that he didn't benefit. In fact, he ended up paying more than he would have if he had paid it on time because he managed to pay in full penalties and interest before this case was even indicted. And the problem with the government's case was that these 433A agreements that they relied on, the agent testified and admitted that the information they contended was missing wasn't, in fact, missing, that they were missing a page that referred to SRC in one of the 433As, and that in the other one, they, there were boxes checked suggesting that there were other documents that were included, which he didn't have and he couldn't say whether the IRS had or didn't have, but the accountant did have. So the testimony from the agent showed that they didn't even know, or that agent didn't know, whether they did or didn't have all of the documents that they were relying on to claim that Mr. Snyder lied. So there wasn't sufficient evidence to support that, and there was no benefit to him in successfully completing this installment agreement, other than he met his obligations. Thank you. Thank you. We thank both the parties in this case, and we have a special thanks to Ms. Gambino. I understand you were court-appointed. That's correct, Your Honor. So you have the thanks of the court for your work. This concludes the arguments in Appeal Number 21-2986.